## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| JAMAL WINGER, individually and on behalf of all others similarly situated,<br><br>v.<br><br>THE QUAKER OATS COMPANY | Case No. 1:22-cv-02023<br>FLSA Collective Action<br>FED. R. CIV. P. 23 Class Action |

### PLAINTIFF'S ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT

#### SUMMARY

1.  Like many other companies across the United States, Quaker Oats' timekeeping and payroll systems were affected by the hack of Kronos in 2021.

2.  That hack led to problems in timekeeping and payroll throughout Quaker Oats' organization.

3.  As a result, Quaker Oats' workers who were not exempt from overtime under federal and state law were not paid for all hours worked and/or were not paid their proper overtime premium for all overtime hours worked after the onset of the Kronos hack.

4.  Jamal Winger is one such Quaker Oats worker.

5.  Quaker Oats could have easily implemented a system to accurately record time and properly pay non-exempt hourly and salaried employees until issues related to the hack were resolved.

6.  But it didn't. Instead, Quaker Oats used prior pay periods or reduced payroll estimates to avoid paying wages and proper overtime to these non-exempt hourly and salaried employees.

7. Quaker Oats pushed the cost of the Kronos hack onto the most economically vulnerable people in its workforce.

8. Quaker Oats made the economic burden of the Kronos hack fall on front-line workers—average Americans—who rely on the full and timely payment of their wages to make ends meet.

9. Quaker Oats' failure to pay wages, including proper overtime, for all hours worked violates the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*

10. Quaker Oats' failure to pay wages, including proper overtime, for all hours worked to its workers in Indiana also violates the Indiana Minimum Wage Law (IMWL), I.C. § 22-2-2 *et seq.*, and the Indiana Wage Payment Statute (IWPS), I.C. § 22-2-5 *et seq.*

11. Winger brings this lawsuit to recover these unpaid overtime wages and other damages owed by Quaker Oats to her and Quaker Oats' other non-overtime-exempt workers, who were the ultimate victims of not just the Kronos hack, but Quaker Oats' decision to make its own non-exempt employees workers bear the economic burden for the hack.

12. This action seeks to recover the unpaid wages and other damages owed by Quaker Oats to all these workers, along with the penalties, interest, and other remedies provided by federal and Indiana law.

## JURISDICTION & VENUE

13. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

14. The Court has supplemental jurisdiction over any state law sub-classes pursuant to 28 U.S.C. § 1367.

15. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Quaker Oats is headquartered in this District.

## PARTIES

16. **Plaintiff Jamal Winger** is a natural person.

17. Winger was, at all relevant times, an employee of Quaker Oats.

18. Winger has worked for Quaker Oats since April 2016.

19. Winger worked for Quaker Oats in Indiana.

20. Winger represents at least two groups of similarly situated Quaker Oats workers.

21. Winger represents a collective of similarly situated workers under the FLSA pursuant to 29 U.S.C. § 216(b). This "FLSA Collective" is defined as:

> **All current or former non-exempt employees of Quaker Oats (including its subsidiaries and alter egos such as Gatorade or The Gatorade Company), who worked in the United States at any time since the onset of the Kronos ransomware attack, on or about December 11, 2021, to the present.**

22. Winger represents a class of similarly situated workers under Indiana law pursuant to Federal Rule of Civil Procedure 23. This "Indiana Class" is defined as:

> **All current or former non-exempt employees of Quaker Oats (including its subsidiaries and alter egos such as Gatorade or The Gatorade Company) who worked in Indiana at any time since the onset of the Kronos ransomware attack, on or about December 11, 2021, to the present.**

23. Throughout this Complaint, the FLSA Collective members are also referred to as the "Similarly Situated Workers."

24. **Defendant The Quaker Oats Company ("Quaker Oats")** is a foreign corporation.

25. Quaker Oats is headquartered in this District.

26. Quaker Oats may be served by service upon its registered agent, **CT Corporation System, 208 S. LaSalle St., Ste. 814, Chicago, IL 60604**, or by any other method allowed by law.

27. At all relevant times, Quaker Oats has been doing business under the assumed name, "Gatorade."

28. At all relevant times, Quaker Oats has been doing business under the assumed name, "The Gatorade Company."

29. At all relevant times, Quaker Oats exerted operational control over its subsidiaries and alter egos.

30. At all relevant times, Quaker Oats substantially controlled the terms and conditions of employment for workers of its subsidiaries and alter egos.

31. At all relevant times, Quaker Oats had a common control and management of labor relations regarding employees of its subsidiaries and alter egos.

32. Quaker Oats' subsidiaries and alter egos include Gatorage and The Gatorade Company.

33. Quaker Oats employed and/or jointly employed, with its subsidiaries and alter egos, Winger and the Similarly Situated Workers.

34. Quaker Oats and its subsidiaries and alter egos are joint employers for purposes of the FLSA.

35. Quaker Oats and its respective subsidiaries and alter egos are joint employers for purposes of Indiana law.

36. Throughout this Complaint, Quaker Oats and its subsidiaries and alter egos are referred to jointly as "Quaker Oats."

## COVERAGE UNDER THE FLSA

37. At all relevant times, Quaker Oats was an employer of Winger within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

38. At all relevant times, Quaker Oats was and is an employer of the FLSA Collective Members within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

39. Quaker Oats was and is part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

40. During at least the last three years, Quaker Oats has had gross annual sales in excess of $500,000.

41. Quaker Oats was and is part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1).

42. Quaker Oats employs many workers, including Winger, who are engaged in commerce or in the production of goods for commerce and/or who handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce by any person.

43. The goods and materials handled, sold, or otherwise worked on by Winger, and other Quaker Oats employees and that have been moved in interstate commerce include, but are not limited to, telephones, computers, and office supplies and equipment.

## FACTS

44. Quaker Oats provides insurance, repair, installation, and support services for electronics.

45. Quaker Oats employs over 23,000 workers. Quaker Oats, About Us, https://www.Quaker Oats.com/about/ (last visited Apr. 12, 2022).

46. Many of Quaker Oats' employees are non-exempt hourly and salaried workers.

47. Since at least 2021, Quaker Oats has used timekeeping software and hardware operated and maintained by Kronos.

48. On or about December 11, 2021, Kronos was hacked with ransomware.

49. The Kronos hack interfered with the ability of its customers, including Quaker Oats, to use Kronos's software and hardware to track hours and pay employees.

50. Since the onset of the Kronos hack, Quaker Oats has failed to keep accurate track of the hours that Winger and Similarly Situated Workers have worked.

51. Instead, Quaker Oats has used various methods to estimate the number of hours Winger and Similarly Situated Workers work in each pay period.

52. For example, Quaker Oats issued paychecks based on scheduled hours or estimated hours, or simply duplicated paychecks from pay periods prior to the Kronos hack.

53. As a result of Quaker Oats' failure to accurately track the actual hours worked each week, employees who were non-exempt and worked overtime were in many cases paid less than the hours they worked in the workweek, including overtime hours.

54. Many employees were not even paid for all their non-overtime wages for hours worked in certain workweeks.

55. Winger is one of the thousands of employees affected by these pay and timekeeping practices.

56. Instead of paying Winger for the hours she actually worked (including overtime hours), Quaker Oats simply paid based on estimates of time or pay, or based upon arbitrary considerations **other than** Winger's actual hours worked and regular pay rates, in multiple workweeks.

57. In some instances, Winger was paid portions of the overtime she worked, but the overtime rate she was paid was not at least 1.5 times her agreed rate of pay, including required adjustments for shift differentials and non-discretionary bonsuses.

58. In properly calculating and paying overtime to a non-exempt employee, the only metrics that are needed are: (1) the number of hours worked in a day or week, and (2) the employee's regular rate, taking into account shift differentials, non-discretionary bonuses, and other factors allowed under the law.

59. Quaker Oats knows it has to pay proper overtime premiums to non-exempt hourly and salaried employees.

60. Quaker Oats knows this because, prior to the Kronos hack, it routinely paid these workers for all overtime hours at the proper overtime rates.

61. Quaker Oats could have instituted any number of methods to accurately track and timely pay its employees for all hours worked.

62. Instead of accurately tracking hours and paying employees their overtime, Quaker Oats decided to arbitrarily pay these employees, without regard to the overtime hours they worked or the regular rates at which they were supposed to be paid.

63. Even to the extent it did pay some overtime to affected employees, Quaker Oats failed to take into account shift differentials and non-discretionary bonuses, such that

the overtime premium Quaker Oats did pay, if any, was not the full overtime premium owed under the law based on the employees' agreed rate of pay.

64. It was feasible for Quaker Oats to have its employees and managers report accurate hours so they could be paid the full and correct amounts of money they were owed for the work they did for the company.

65. But it chose not to do that.

66. In other words, Quaker Oats pushed the effects of the Kronos hack onto the backs of its most economically vulnerable workers, making sure that it kept the money it owed to those employees in its own pockets, rather than take steps to make sure its employees were paid on time and in full for the work they did.

67. Winger is just one of the many Quaker Oats employees who had to shoulder the burden of this decision by Quaker Oats.

68. Winger was a non-exempt hourly employee of Quaker Oats.

69. Winger regularly worked over 40 hours per week for Quaker Oats.

70. Winger's normal, pre-Kronos hack hours are reflected in Quaker Oats' records.

71. Since the Kronos hack, Quaker Oats has not paid Winger for her actual hours worked each week.

72. Since the hack took place, Quaker Oats has not been accurately recording the hours worked by Winger and its other workers.

73. Even when Quaker Oats has issued payment to Winger for any overtime, the overtime is not calculated based on Winger's regular rates, as required by federal law.

74. Quaker Oats was aware of the overtime requirements of the FLSA.

75. Quaker Oats nonetheless failed to pay the full overtime premium owed to certain non-exempt hourly and salaried employees, such as Winger.

76. Quaker Oats' failure to pay overtime to these non-exempt workers was, and is, a willful violation of the FLSA.

77. The full overtime wages owed to Winger and the Similarly Situated Workers became "unpaid" when the work for Quaker Oats was done—that is, on Winger and the Similarly Situated Workers' regular paydays. *E.g.*, *Martin v. United States*, 117 Fed. Cl. 611, 618 (2014); *Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir.1993); *Cook v. United States*, 855 F.2d 848, 851 (Fed. Cir. 1988); *Olson v. Superior Pontiac–GMC, Inc.*, 765 F.2d 1570, 1579 (11th Cir.1985), *modified*, 776 F.2d 265 (11th Cir.1985); *Atlantic Co. v. Broughton*, 146 F.2d 480, 482 (5th Cir.1944); *Birbalas v. Cuneo Printing Indus.*, 140 F.2d 826, 828 (7th Cir.1944).

78. At the time Quaker Oats failed to pay Winger and the Similarly Situated Workers in full for their overtime hours by their regular paydays, Quaker Oats became liable for all prejudcment interest, liquidated damages, penalties, and any other damages owed under the law.

79. In other words, there is no distinction between late payment and nonpayment of wages under the law. *Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir.1993).

80. Even if Quaker Oats made any untimely payment of unpaid wages due and owing to Winger or the Similarly Situated Workers, any alleged payment was not supervised by the Department of Labor or any court.

81. The untimely payment of overtime wages, in itself, does not resolve a claim for unpaid wages under the law. *See*, *e.g.*, *Seminiano v. Xyris Enterp., Inc.*, 602 Fed.Appx. 682,

683 (9th Cir. 2015); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-54 (11th Cir. 1982).

82. Nor does the untimely payment of wages, if any, compensate workers for the damages they incurred due to Quaker Oats' acts and omissions resulting in the unpaid wages in the first place.

83. Winger and the Similarly Situtated Workers remain uncompensated for the wages and other damages owed by Quaker Oats under federal law.

## COLLECTIVE ACTION ALLEGATIONS

84. Winger incorporates all other allegations.

85. Numerous individuals were victimized by Quaker Oats' patterns, practices, and policies, which are in willful violation of the FLSA.

86. Based on her experiences and tenure with Quaker Oats, Winger is aware that Quaker Oats' illegal practices were imposed on the FLSA Collective.

87. The FLSA Collective members were not paid their full overtime premiums for all overtime hours worked.

88. These employees are victims of Quaker Oats' respective unlawful compensation practices and are similarly situated to Winger in terms of the pay provisions and employment practices at issue in the collective in this lawsuit.

89. The workers in the FLSA Collective were similarly situated within the meaning of the FLSA.

90. Any differences in job duties do not detract from the fact that these FLSA non-exempt workers were entitled to overtime pay.

91. Quaker Oats' failure to pay overtime compensation at the rates required by the FLSA result from generally applicable, systematic policies, and practices, which are not dependent on the personal circumstances of the FLSA Collective members.

92. The FLSA Collective should be notified of this action and given the chance to join pursuant to 29 U.S.C. § 216(b).

## CLASS ACTION ALLEGATIONS

93. Winger incorporates all other allegations.

94. The illegal practices Quaker Oats imposed on Winger were likewise imposed on the Indiana Class members.

95. Numerous other individuals who worked for Quaker Oats were were not properly compensated for all hours worked, as required by Indiana law.

96. The Indiana Class is so numerous that joinder of all members of the class is impracticable.

97. Quaker Oats imposed uniform practices and policies on Winger and the Indiana Class members regardless of any individualized factors.

98. Based on his experience and tenure with Quaker Oats, as well as coverage of the Kronos hack, Winger is aware that Quaker Oats' illegal practices were imposed on the Indiana Class members.

99. Indiana Class members were all not paid proper overtime when they worked in excess of 40 hours per week.

100. Quaker Oats' failure to pay wages and overtime compensation in accordance with Indiana law results from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Indiana Class members.

101. Winger's experiences are therefore typical of the experiences of the Indiana Class members.

102. Winger has no interest contrary to, or in conflict with, the members of the Indiana Class. Like each member of the proposed class, Winger has an interest in obtaining the unpaid wages and other damages owed under the law.

103. A class action, such as this one, is superior to other available means for fair and efficient adjudication of the lawsuit.

104. Absent this action, many Indiana Class members likely will not obtain redress of their injuries and Quaker Oats will reap the unjust benefits of violating Indiana law.

105. Furthermore, even if some of the Indiana Class members could afford individual litigation against Quaker Oats, it would be unduly burdensome to the judicial system.

106. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

107. The questions of law and fact common to each of the Indiana Class members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

   a. Whether the Indiana Class members were not paid overtime at 1.5 times their regular rate of pay for hours worked in excess of 40 in a workweek;

   b. Whether Community Health's failure to pay overtime at the rates required by law violated the Indiana Minimum Wage Act.

108. Winger's claims are typical of the Indiana Class members. Winger and the Indiana Class members have all sustained damages arising out of Quaker Oats' illegal and uniform employment policies.

109. Winger knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

110. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude class or collective action treatment.

### FIRST CAUSE OF ACTION—OVERTIME VIOLATIONS OF THE FLSA AS TO WINGER AND THE FLSA COLLECTIVE

111. Winger incorporates each other allegation.

112. By failing to pay Winger and the FLSA Collective members overtime at 1.5 times their regular rates, Quaker Oats violated the FLSA. 29 U.S.C. § 207(a).

113. Quaker Oats owes Winger and the FLSA Collective members overtime for all hours worked in excess of 40 in a workweek, at a rate of at least 1.5 times their regular rates of pay.

114. Quaker Oats owes Winger and the FLSA Collective members the difference between the rate actually paid for overtime, if any, and the proper overtime rate.

115. Likewise, Quaker Oats owes Winger and the FLSA Collective members their agreed-upon rates of pay for all hours worked up to and including 40 each week in which they worked over 40 hours in the week, but were not paid in full for all hours.

116. Quaker Oats knowingly, willfully, or in reckless disregard carried out this illegal pattern and practice of failing to pay the FLSA Collective members overtime compensation.

117. Because Quaker Oats knew, or showed reckless disregard for whether, its pay practices violated the FLSA, Quaker Oats owes these wages for at least the past three years.

118. Quaker Oats' failure to pay overtime compensation to these FLSA Collective members was neither reasonable, nor was the decision not to pay overtime made in good faith.

119. Because Quaker Oats' decision not to pay overtime was not made in good faith, Quaker Oats also owes Winger and the FLSA Collective members an amount equal to the unpaid overtime wages as liquidated damages.

120. Accordingly, Winger and the FLSA Collective members are entitled to overtime wages under the FLSA in an amount equal to 1.5x their regular rates of pay, plus liquidated damages, attorney's fees, and costs.

### SECOND CAUSE OF ACTION—VIOLATIONS OF THE IMWL AS TO WINGER AND THE INDIANA CLASS

121. Winger incorporates all other allegations.

122. The conduct alleged in this Complaint violates the IMWL, I.C. § 22-2-2-1 *et seq*.

123. At all relevant times, Quaker Oats has been an "employer" within the meaning of the IMWL. I.C. § 22-2-2-3.

124. At all relevant times, Quaker Oats employed Winger and the other Indiana Class members as "employees" within the meaning of the IMWL. I.C. § 22-2-2-3.

125. At all relevant times, Quaker Oats employed two or more employees each week.

126. The IMWL requires an employer like Quaker Oats to pay employees at a rate no less than the minimum wage for each hour worked. I.C. § 22-2-2-4(c).

127. As a result of Quaker Oats' failure to pay Winger and the Indiana Class at a rate no less than the minimum wage for all hours worked, Quaker Oats violated the IMWL.

128. The IMWL requires an employer like Quaker Oats to pay overtime to all non-exempt employees. I.C. § 22-2-2-4(f).

129. Winger and the other Indiana Class members are non-exempt employees who are entitled to be paid overtime for all overtime hours worked at a rate of no less than 1.5x their regular rate. I.C. § 22-2-2-4(f).

130. Within the applicable limitations period, Quaker Oats had a policy and practice of failing to pay proper overtime to the Indiana Class members for their hours worked in excess of 40 hours per week.

131. As a result of Quaker Oats' failure to pay proper overtime to Winger and the Indiana Class members for work performed in excess of 40 hours in a workweek, Quaker Oats violated the IMWL.

132. Likewise, Quaker Oats owes Winger and the Indiana members their agreed-upon rates of pay for all hours worked up to and including 40 each week in which they worked over 40 hours in the week, but were not paid in full for all hours.

133. The IMWL requires an employer like Quaker Oats to furnish each employee at each pay period an accurate statement containing: the hours worked by the employee, the wages paid to the employee, and a listing of any deductions made. I.C. § 22-2-2-8(a).

134. Within the applicable limitations period, Quaker Oats had a policy and practice of failing to provide their employees with the wage statements required by the IMWL.

135. As a result of Quaker Oats' failure to provide the wage statements required by the IMWL, Quaker Oats violated the IMWL.

136. Winger and the Indiana Class members are entitled to recover their unpaid wages, liquidated damages, attorneys' fees, costs, and all other legal and equitable relief provided under the IMWL. I.C. § 22-2-2-9.

### THIRD CAUSE OF ACTION—VIOLATIONS OF THE IWPS
### AS TO WINGER AND THE INDIANA CLASS

137. Winger incorporates all other allegations.

138. The conduct alleged in this Complaint violates the IWPS, I.C. § 22-2-5 *et seq.*

139. At all relevant times, Quaker Oats has been an "employer" within the meaning of the IWPS.

140. At all relevant times, Quaker Oats employed Winger and the Indiana Class members as "employees" within the meaning of the IWPS.

141. Quaker Oats failed to pay earned wages and overtime to Winger and the Indiana Class Members.

142. Quaker Oats failed to pay the wages earned by Winger and the Indiana Class members within 10 business days. I.C. § 22-2-5-1(b).

143. Quaker Oats had a policy and practice of failing make timely payemnts to the Winger and the Indiana Class members.

144. Quaker Oats did not act in good faith in failing to pay earned wages to Winger and the Indiana Class members and in violating the IWPS.

145. As a result of Quaker Oats' failure to pay earned wages to Winger and the Indiana Class members within the time required by the IWPS, Quaker Oats violated the IWPS.

146. Winger and the Indiana Class members are entitled to recover all wages due to them, liquidated damages in an amount equal to 2x of the wages due to them, attorneys' fees, costs, and all other legal and equitable relief provided under the IWPS. I.C. § 22-2-5-2.

## **RELIEF SOUGHT**

Winger prays for judgment against Quaker Oats as follows:

    a.    For an order certifying a collective action for the FLSA claims;

    b.    For an order certifying a class action for the Indiana law claims;

    c.    For an order finding Quaker Oats liable for violations of federal wage laws with respect to Winger and all FLSA Collective members covered by this case;

    d.    For an order finding Quaker Oats liable for violations of Indiana wage laws with respect to Winger and all Indiana Class members covered by this case;

    e.    For a judgment awarding all unpaid wages, liquidated damages, and penalties under federal wage laws to Winger and all FLSA Collective members covered by this case;

    f.    For a judgment awarding all unpaid wages, liquidated damages, and penalties under Indiana wage laws to Winger and all Indiana Class members covered by this case;

    g.    For an equitable accounting and restitution of wages due to Winger and all FLSA Collective and Indiana Class members members covered by this case;

    h.    For a judgment awarding attorneys' fees to Winger and all FLSA Collective and Indiana Class members covered by this case;

    i.    For a judgment awarding costs of this action to Winger and all FLSA Collective and Indiana Class members covered by this case;

    j.    For a judgment awarding pre- and post-judgment interest at the highest rates allowed by law to Winger and all FLSA Collective and Indiana Class members covered by this case; and

    k.    For all such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By:
*/s/ Matthew S. Parmet*

**Matthew S. Parmet**
N.D. Ill. Bar # 24069719 (TX)
**PARMET PC**
3 Riverway, Ste. 1910
Houston, TX 77056
phone  713 999 5228
matt@parmet.law

**Warren Astbury, Esq.**
Illinois Bar No.: 6298999
**MORGAN & MORGAN, P.A.**
55 E. Monroe St., Ste. 3800
Chicago, IL 60603
Tel:    (312) 706-0550
Fax:   (313) 739-1976
wastbury@forthepeople.com

**Attorneys for Plaintiff**

- 18 -